

**Monteiro & Fishman LLP**
ATTORNEYS AT LAW

Main Office:
91. N. Franklin Street
Suite 108
Hempstead, New York 11550
Tel.: 516/280.4600
Fax: 516/280.4600
MFLawNY.com

Marcus Monteiro
516/280.4600 ext. 301
mmonteiro@mflawny.com

March 26, 2019

**BY ECF**
The Honorable Anne Y. Shields
Magistrate Judge Eastern District of New York
100 Federal Plaza, Courtroom 830
Central Islip, New York 11722

      RE:    *Fredis Ramires and Horlin Bonilla v. Ryan Bradley et al.*
              CV: 17-5728 (SJF)(AYS)

Dear Judge Shields:

      This Firm represents Plaintiffs in this Fair Labor Standards Act ("FLSA") case. The parties representing Plaintiffs and Defendants hereby jointly notify the Court that they have agreed to settle their claims against each-other. The Parties respectfully request that the Court authorize the settlement agreement (the "Settlement Agreement"), a copy of which is attached hereto as Ex. A. Cheeks v. Freeport Pancake House, Inc., et al., 796 F.3d 199 (2d Cir. 2015). As explained below, the Parties respectfully state that the Settlement Agreement is fair, reasonable, and equitable.

**A.**    **Background**

      Named-Plaintiffs, Fredis Ramires and Horlin Bonilla, along with 18 other Opt.-in Plaintiffs worked/work for a business known as Miami Car Wash located at 2056 Hempstead Turnpike, East Meadow, New York (collectively, "Plaintiffs"). Named-Plaintiffs filed their Complaint against Defendants Ryan Bradley, Kevin Bradley, ABC Corp. d/b/a Miami Car Wash, and Camila (last name unknown) ("Defendants") on September 29, 2017 asserting claims for unpaid overtime under the F.L.S.A. and the New York Labor Law, unlawful deductions, spread of hours pay, violations of the Wage Theft Prevention Act, wage statement and notification of pay rate requirements. Plaintiffs also allege that a tip-credit was improperly applied against their wages. Plaintiffs worked for Defendants covering various employment terms, from before the relevant statute of limitations of 2011 until the present.

Defendants contest the dates of Plaintiffs' alleged employ, contest the dates and times that Plaintiffs claimed to have worked, and further claim that Plaintiffs were properly paid all wages owed for all hours worked. Defendants contend that their wage practices do not violate either the FLSA or New York Labor Law, are in compliance with all applicable laws, rules and regulations, and that the tip-credit was properly noticed and applied. Defendants further contend that they are not liable for any violations that may have occurred prior to the date they purchased the business known as Miami Car Wash, on May 7, 2015.

On October 9, 2017, Defendants' attorneys waived service of the Complaint; on January 1, 2018 Defendants filed their Answer, generally denying the Complaint's allegations and asserting various affirmative defenses. On January 22, 2018, Defendants filed a Third-Party Complaint ("TPC") against Third-Party Defendants ("TPD") AGDG Car Wash Corp. ("AGDG"), PM&JP Car Wash, LLC. ("PM&JP"), Richard Gabay ("Gabay") Peter Mazza ("Mazza") and Joseph Panza ("Panza"). The TPC states that RPB purchased the business known as "Miami Car Wash" from AGDG on May 7, 2015. AGDG in turn purchased "Miami Car Wash" from PM&JP on October 1, 2014 – who owned it since before the statutory period of Plaintiffs' claims as follows:

| **PM&JP** (Peter Mazza and Joseph Panza) | **AGDG** (Richard Gabay) | **RPB** (Ryan Bradley) |
|---|---|---|
| Since before 2011 (SOL on Plaintiffs' claims) to October 1, 2014 | October 1, 2014 to May 7, 2015 | May 7, 2015 to Current |

Accordingly, Defendants seek contribution, in part, from the prior owners of Miami Car Wash for those years Plaintiffs claim damages that predate their ownership. The Parties thereafter engaged in extensive discovery; exchanging and analyzing over 7,000 documents. The Parties participated in the EDNY medication program, and attended mediation sessions on June 13, 2018, August 28, 2018, and October 24, 2018. Each mediation session was over five hours long and involved the exchange of competing briefs supporting each Parties position. The first two sessions were attended by mediator Patrick M. McKenna while the third was attended by attorneys only. After failing to reach a global settlement of Plaintiffs claims against Defendants and TPDs, around December 2018, Plaintiffs and Defendants reached an agreement in principal as to a settlement amongst themselves and are both continuing to litigate their respective claims against TPDs.

On June 14, 2018 the Court granted Plaintiffs' motion to certify a F.L.S.A. collective action and approved the revised Notice of Collective Action Lawsuit and Consent to Become a Party Plaintiff Form.

On January 7, 2019, the Parties advised the Court they have reached a settlement of Plaintiffs' claims with Defendants during the three-year period Defendants owned Miami Car Wash (from May 7, 2015 to the present) for the total amount of $650,000.00. The payment terms of the Settlement Agreement are as follows: $100,000.00 within 40 days from the approval of the Settlement Agreement; $450,000.00 by six months thereafter; and $100,000.00 by eight months thereafter. The Settlement Agreement contains the following allocations:

>   $5,000.00 to Fredis Ramires as a service award;
>   $5,000.00 to Horlin Bonilla as a service award;
>   $5,000.00 to Roberto Carlos Aparicio Ramos as a service award;
>   $12,500 to Arden Claims Services for administrative costs:
>   $216,667.67 to Monteiro & Fishman LLP for attorneys' fees;
>   $1,475.00 to Monteiro & Fishman LLP for costs; and
>   $404,357.33 to the Plaintiffs and Opt-in Plaintiffs as detailed herein.

Plaintiffs moved to amend their Complaint on February 14, 2019, which is to be fully submitted by March 28, 2019. Plaintiffs and Defendants jointly moved to disqualify TPDs' counsel on February 21, 2019, which is to be fully submitted by May 6, 2019.

### B.    The Settlement Agreement between Plaintiffs and Defendants is Fair and Reasonable

The attached proposed settlement agreement warrants approval as it is fair, reasonable, and adequate. Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." Le v. SITA Info. Networking Computing USA, Inc., 2008 WL 724155, at *1 (E.D.N.Y. 2008); Aponte v. Comprehensive Health Mgmt., Inc., 2013 WL 1364147, at *4 (S.D.N.Y. 2013) (Courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.")

Here, the parties have engaged in significant discovery efforts and exchanged over 7,000.00 documents. They have each gathered sufficient information to permit them to assess the strengths and weaknesses of the asserted claims and their respective defenses. The Parties negotiated over three mediation sessions covering several months before the framework of an agreement was reached.

Plaintiffs are represented by competent counsel well versed in employment law. Likewise, Defendants are represented by competent counsel well-versed in employment law and who presented strong economic defenses based upon the facts. Therefore, the arm's length bargaining between the represented parties weighs in favor of finding a settlement reasonable. The Named-Plaintiffs have been informed of, and have approved, the terms of the proposed settlement, including the overall amount to be paid by Defendants, as well as the individual amounts to be paid to each plaintiff, and there have been no objections to the settlement.

Driving this settlement was the central fact that Defendants may not have substantial assets to pay a judgment should Plaintiffs achieve one. Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("Plaintiffs' counsel actively sought a settlement because of plaintiffs' legitimate concerns about the collectability of any judgment against the defendants."); Cruz v. Relay Delivery, Inc., 2018 WL 4203720 (S.D.N.Y. 2018)("Moreover, plaintiffs in this case have expressed

serious concerns about collectability and have agreed to a payment schedule, which "militates in favor of finding a settlement reasonable."); Hart v. RCI Hosp. Holdings, Inc., No. 09-CV-3043 (PAE), 2015 WL 5577713, at *10 (S.D.N.Y. Sept. 22, 2015) (significant "risk that plaintiffs would not be able to collect, or fully collect, on a judgment" supported approval of settlement agreement, which "[g]uaranteed recovery from the other two defendants in the event that [one] prove[d] unable to pay the entire settlement amount").

Specifically, the main asset of Kevin Bradley, and his son Ryan Bradley, is Kevin's residence located at Willa Way in Massapequa, New York, which has a mortgage and is subject to a homestead exemption. Additionally, Miami Car Wash is the only business owned by Ryan, does not own the real property on which it is located and is the subject of a promissory note which has about $1,000,000.00 still owed and outstanding. Accordingly, Defendants fail to have significant assets upon which a potential judgment can be enforced against. Furthermore, settling this matter now will avoid incurring the additional costs of litigation on both sides.

Plaintiffs believe that the total value of Plaintiffs damages is $1,733,752.60 ($1,503,517.63 for Plaintiffs Ramires, Bonilla, Alverez, Velasquez, Belloza Garcia, Castillo, Garcia, Interiano, Lopez, Gaitan, Aguilar, Garcia, Avila, Cruz, and Montoya + $230,235.00 for Plaintiffs Gonzalez and Vasquez). The total settlement of $650,000.00, exclusive of costs and fees, represents 37.50% of the maximum potential damages. The proposed disposition of $419,357.33 (being $15,000 (service award) + $404,357.33 [directly to Plaintiffs and Opt-in Plaintiffs]) represents 24.18% of the maximum potential damages. However, those Plaintiffs who worked at Miami Car Wash before the Defendants' ownership period (May 7, 2015) are continuing to pursue their claims against such prior owners. As such, Plaintiffs believe it is likely they will participate in substantial recovery in addition to this settlement. Lazo v. Kim's Nails at York Avenue, Inc., 2019 WL 95638 (S.D.N.Y. 2010) (Settlement of 44% of the maximum potential damages is fair and reasonable.)

Regarding the collective class, Plaintiffs filed 12 opt-in consent forms on April 3, 2018: one on April 9, 2018; and one on April 18, 2018. On February 12, 2019, Arden Claims Service ("ACS") mailed the Court approved Consent to Become a Party Plaintiff Form to all employees who worked at Miami Car Wash during Defendants' ownership period, totaling 45 persons. Thereafter, Plaintiffs received and filed four more opt-in consent forms – for a total of 18.

Plaintiffs note that two prospective plaintiffs signed and mailed to Plaintiffs' attorneys a "Consent to Become a Party Plaintiff and Join Lawsuit" from persons named Jose H. Diaz, dated March 3, 2019, and Mario Erimaldi Dominguez, dated March 12, 2019. Plaintiffs' attorneys have been informed by opt-in plaintiff, Robert Ramos that Jose Diaz does not want to provide information regarding this action and does not want to be a party plaintiff. Similarly, Mr. Ramos has attempted to contact Mr. Dominguez through joint acquaintances, but has been unable to confirm any further information about Mr. Dominguez, nor has Mr. Dominguez reached out this Plaintiffs' attorneys office. As such, we do not believe that either prospective opt-in plaintiff desires to be part of this case and have not allocated any disbursements to them.

Accordingly, Plaintiffs have exerted all reasonable efforts in order to identify and provide any potential similarly situated workers the opportunity to opt-into this collective class and participate in this settlement and request the Settlement Agreement be approved as to the 18 plaintiffs that have cooperated and consent to joint this lawsuit.

Therefore, no factors weigh against allowing the settlement to proceed as requested because: a) Plaintiffs do not believe there are many similarly situated workers; b) Defendants explicitly deny any wrongdoing, and have no history of F.L.S.A. non-compliance; and c) continuing to develop the record will only serve to enlarge costs on both sides and not serve any useful purpose in light of Defendants' lack of a history of non-compliance. Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335-336 (S.D.N.Y. 2012).

Lastly, the parties agree that the settlement agreement represents a reasonable compromise of all parties' positions and the proposed settlement regarding attorney fees and expenses is also fair and reasonable, as Plaintiffs' counsel's own compensation does not adversely affect the extent of the relief obtained by Plaintiffs.

**C.     The Service Award Should be Approved**

Named Plaintiffs Fredis Ramires, Horlin Bonilla, along with Opt-in Plaintiff Roberto Carlos Aparicio Ramos are entitled to a service award for their significant contributions to this case. Mr. Ramires and Bonilla were the initial plaintiffs herein, and were essential in corralling the class, arraigning for the many meetings held throughout this litigation and maintaining constant communication between their attorneys and the class. Opt-in Plaintiff, Mr. Ramos, was similarly essential in organizing the class members and compiling discovery documents. Febus v. Guardian First Funding Group, LLC, 870 F. Supp.2d 337 (S.D.N.Y. 2012) ("Named plaintiff Febus will receive $3,000 for his significant contributions to the litigation, including his assistance to counsel's fact discovery efforts …")

**D.     The Administrative Fee Should be Approved**

The Administrative fee of  is fair and reasonable and should be approved. Arden Claims Services ("ACS") was jointly selected by the parties as Settlement Administrator to administer the settlement between the parties in this matter. ACS is a class action settlement administration company headquartered in Port Washington, New York. ACS has decades of experience in arbitration, mediation, and the practice of law, including class actions, as well as staff with years of experience in third-party claims administration, mail-house operations and call center support management.

Here, ACS has been and will be responsible for, among other things:

  a. Preparing, printing and disseminating the Notice to the Class and any other notices required by the Court or by law;

b. Copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Party;
c. Promptly furnishing to counsel for the Parties copies of any Opt-out Statements, objections or other written or electronic communications from the Class which ACS receives;
d. Keeping track of Opt-out Statements and objections or other written or electronic communications from the Class which ACS receives including but not limited to maintaining the original mailing envelope in which the request was mailed;
e. Mailing all required tax forms to Named Plaintiffs, Class Members and to Class Counsel as provided herein;
f. Setting up a Settlement Account to be used for the distribution of all Settlement Checks to Class Members, Plaintiffs' Counsel, ACS, and to Named Plaintiffs;
g. Calculating the amount of each Named Plaintiff and Class Member's Settlement Check;
h. Calculating and paying each Named Plaintiff and Class Member's taxes if so required and preparing appropriate tax forms for Defendants and for each Class Member;
i. Mailing the Settlement Checks to Class Members and Named Plaintiffs as well as Enhancement Awards;
j. Ascertaining current address and addressee information for each Notice returned as undeliverable and the mailing of Notice;
k. Responding to inquiries of the Class regarding procedures for filing objections and Opt-out Statements;
l. Referring to Plaintiff's Counsel all inquiries by the Class regarding matters not within ACS's duties specified herein;
m. Responding to inquiries from Class Counsel and Defense Counsel consistent with ACS's duties specified herein;
n. Promptly apprising Class Counsel and Defense Counsel of the activities of ACS;
o. Maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class;
p. Timely responding to communications from the Parties or their counsel; and
q. Such other tasks that the Parties mutually agree upon.

The ACS fees and expenses for services rendered in connection with the administration of the settlement, including fees incurred and anticipated future costs for completion of the administration, are anticipated to be $12,500.00. ACS will continue its work on this matter by distributing checks to each class claimant and preparing 1099s for Defendants and for each Class Member. ACS has performed such services in connection with dozens of similar matters in this jurisdiction and fees in connection therewith have been found to be fair and reasonable, for example: Davis *et al.* v. Uptown Communications, 16-cv-3990 (E.D.N.Y.); Morris et al. v. Alle Processing Corp., 08-cv-4874 (E.D.N.Y.); Gittens *et al.* v. 7-Eleven, 17-cv-06378 (E.D.N.Y.); Vazquez v. Tibana Finishing, 17-cv-1907 (E.D.N.Y.); and Andrew v. Lakhi General Contractor, 16-cv-02216 (E.D.N.Y.).

### E. Plaintiffs' Attorneys' Fees Should be Approved

By statute under both the FLSA and New York Labor Law, Plaintiffs are entitled to recover attorneys' fees in regard to Plaintiffs' wage claims. In this matter, Defendants have agreed to pay Plaintiffs' counsel the amount of one-third of the Settlement amount, exclusive of costs and expenses associated with the Action. Additionally, Plaintiffs' counsel represented Plaintiffs on a one-third contingency basis, and assumed the risk of receiving payment only if the case was successful, which contingency was contractually agreed to by each Plaintiff, and opt-in Plaintiff. Cisek v Natl. Surface Cleaning, Inc., 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest, and there was no reason to conclude that plaintiffs' counsel benefited at the expense of their clients); Chapman-Green v. Icahn House West LLC, No. 11 Civ. 1190 (MHD), 2013 U.S. Dist. LEXIS 25671, 2013 WL 658245, at *2 (S.D.N.Y. Feb. 21,2013) (amount of fees "is of little consequence' when fees are consensual")(internal citation and quotation omitted); see also Mireku v. Red Vision Sys., Inc., 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013).

Indeed, contingency fee agreements are common and are routinely approved in the Second Circuit in FLSA cases, as the plaintiffs' counsel assumes all of the risk in pursuing these cases. See, e.g., Calle v. Elite Speciality Coatings Plus, Inc., 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. 2014) ("A one-third contingency fee is commonly accepted fee in this Circuit."); Hynun v. Ippudo USA Holdings, 2016 U.S. Dist. LEXIS 39115 (S.D.N.Y. 2016) (Judge Alison J. Nathan)("Fee award representing one third of the total recovery are common in this District."); Janko, et al. v. Patsy's Italian Restaurant, Inc. et al., No. 15-cv-4995 (S.D.N.Y. 2016) ("Moreover, awarding a percentage of the settlement amount [33%] in this case, which settled relatively early and before depositions occurred, is appropriate to avoid the lodestar method's potential to create a disincentive to early settlement.") (quotations and citations omitted); Garcia v. Atlántico Bakery Corp., 2016 U.S. Dist. LEXIS 84631, at * 2 (S.D.N.Y. 2016 )(One-third of the total award is customary contingency percentage in FLSA cases.); Villalva-Zeferino v. Park, 2016 U.S. Dist. LEXIS 19125, at * 4 (S.D.N.Y. 2016) ("I do not address the fee arrangement between plaintiff and his counsel because I do not believe I am required under Cheeks v. Freeport Pancake House, Inc…"); Xiao v. Grand Sichuan Int'l St. Marks, Inc., 2016 U.S. Dist. Lexis 99669 (S.D.N.Y. 2016)(approving 33% contingent fee of total recovery, including backpay, liquidated damages and fees); Sewell v. Bovis Lend Lease LMB, Inc., 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) (approving 33% contingent fee); Johnson v. Brennan, 2011 U.S. Dist. Lexis 105755 at *39 (S.D.N.Y. Sept. 11, 2011) (same); Prasker v. Asia Five Eight LLC, 2010 U.S. Dist. Lexis 1445 at *6 (S.D.N.Y. Jan. 6, 2010) (same with fee award of $1,050,000); Mohney v. Shelly's Prime Steak, 2009 U.S. Dist. Lexis 27899 at *5 (S.D.N.Y. Mar. 31, 2009) (same with fee award of $3,265,000); Flores v. Anjost Corp., 2014 U.S. Dist. Lexis 11026 (S.D.N.Y. 2014) Awarding 33 1/3% contingent fee of $1,050,000 in FLSA and New York State wage and hour lawsuit); Aponte v. Comprehensive Health Management, Inc., 2013 U.S. Dist. Lexis 47637 (S.D.N.Y. 2013) (Awarding 33 1/3% contingent fee on $6,500,000 fund in case involving FLSA and New York State law wage claims).

The Second Circuit favors the use of the contingent percentage of fund method to compensate attorneys in overtime wage and hour actions. See, e.g., McDaniel v. County of Schenectady, 396 F.3d 95 (2d Cir. 2005). "Courts in the Southern District of New York have repeatedly explained that "In wage and hour class action lawsuits, public policy favors a common fund attorney's fee award." Deleon v. Wells Fargo Bank, N.A., 2015 U.S. Dist. Lexis 65261 at *5 (S.D.N.Y. 2015); Johnson, 2011 U.S. Dist. Lexis 105775 at *39. The Court's reasoning is simple: "[T]he percentage method directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution ad early resolution of litigation." Monserrate v. Equipment, Inc., 2012 U.S. Dist. Lexis 164265 at *3 (E.D.N.Y. Nov. 16, 2012). That incentive is the implicit possibility that plaintiffs' counsel will fail to make any recovery of their fees. Butt v. Megabus Ne. LLC, 2012 U.S. Dist. Lexis 137683 at *22 (S.D.N.Y. Sep. 25, 2012) ("Class Counsel risked time and effort and advanced costs and expenses, with no ultimate guarantee of compensation. A percentage-of-recovery fee award of 33.3% is consistent with the Second Circuit's decision in Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany, where the Court held that a 'presumptively reasonable fee" takes into account what a "reasonable, paying client' would pay." citing Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany 493 F.3d 110, 111-12 (2d Cir. 2007).

Even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." Guarini v. Vincent Perito, Inc., 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). Courts will sometimes "cross-check" the reasonableness of an award against the lodestar method, and have awarded a lodestar multipliers of up to eight times the reasonable hour rate by time expended, and in some cases, even higher multipliers. Viafara v. Mciz Corp., 2014 WL 1777438, (S.D.N.Y. 2014); Maley v. Del Global Techs. Corp., 186 F.Supp.2d 358, 369 (S.D.N.Y.2002) (finding multiplier of 4.65 "well within the range awarded by courts in this Circuit and courts throughout the country"); Ramirez v. Lovin' Oven Catering Suffolk, Inc., No. 11 Civ. 520 (JLC), 2012 WL 651640, at *4 (S.D.N.Y. Feb. 24, 2012) (granting attorneys' fees equal to 6.8 times lodestar); In re Lloyd's Am. Trust Fund Litig., No. 96 Civ. 1262, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit"); Davis v. J.P. Morgan Chase & Co., 827 F.Supp.2d 172, 184–86 (W.D.N.Y.2011) (awarding multiplier of 5.3 in wage and hour class action); "); In re RJR Nabisco, Inc. Sec. Litig., No. 88 Civ. 7905(MBM), 1992 WL 210138, at *5 (S.D.N.Y. Aug. 24, 1992) (awarding multiplier of 6); Cosgrove v. Sullivan, 759 F.Supp. 166, 167 n. 1 (S.D.N.Y.1991) (awarding multiplier of 8.74); Vizcaino v. Microsoft Corp., 290 F .3d 1043, 1052–54 (9th Cir.2002) (listing nationwide class action settlements where multiplier ranged up to 8.5 times); Sewell, 2012 WL 1320124, at *13 ("Courts routinely award lodestar multipliers between two to six."); Steiner v. Am. B'casting Co., Inc., 248 Fed. Appx. 780, 783 (9th Cir.2007) (multiplier of 6.85 "falls well within the range of multipliers that courts have allowed"): Buccellato v. AT & T Operations, Inc., No. 10 Civ. 463(LHK), 2011 WL 3348055, at *2 (N.D.Cal. Jun. 30, 2011) (awarding multiplier of 4.3 in wage and hour class action); New England Carpenters Health Benefits Fund v. First Databank, Inc., No. 05 Civ. 11148(PBS), 2009 WL 2408560, at *2 (D.Mass. Aug. 3, 2009) (awarding multiplier of 8.3); In re Enron Corp. Sec., Derivative & ERISA Litig., 586 F.Supp.2d

732, 803 (S .D. Tex.2008) (awarding multiplier of 5.2); In re Cardinal Health Inc. Sec. Litig., 528 F.Supp.2d 752, 768 (S.D, Ohio 2007) (awarding multiplier of six).

However, where the lodestar analysis is used "as a mere cross-check" on an otherwise acceptable percentage of the fund, "the hours documented by counsel need not be exhaustively scrutinized by the district court. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007); Goldberger v. Integrated Res., Inc., 209 F.3d 43 at 50 (2d Cir. 2000) (The hours "need not be exhaustively scrutinized.")

Finally, "The Second Circuit has set forth six factors to evaluate the reasonableness of attorneys' fees in the FLSA settlement context: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation ...; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." Goldberger., 209 F.3d 43 at 50.

**1. Time and Labor Expended by Counsel**

To date, Plaintiffs' counsel's work consisted of, without limitation: filing of the Complaint; appearance at multiple status conferences, preparation for, and appearance at, three separate mediation sessions; extensive discovery review of over 7,000 records; consulting with Plaintiffs throughout the litigation; motions; preparing disclosures; negotiations with Defendants' counsel; edits to the settlement agreement and instant papers in support of the settlement. According to Plaintiffs' detailed billing records, they have expended 465.8 attorney hours, at a reduced billing rate of $400, and 82.2 paralegal hours, at a reduced billing rate of $195.00, totaling fees of $202,354.00. Pucciarelli v. Lakeview Cars, Inc., 2017 WL 2778029, at *2 (E.D.N.Y. June 26, 2017) ("[C]ounsel submitted time entries explaining in sufficient detail the work that was done, billed only for time spent on critical tasks such as client communication and drafting the complaint, did not engage in block-billing for many hours of work at a time, and did not bill for any travel time whatsoever.").

Due to the continuing nature of the litigation (Plaintiffs are continuing their claims against TPDs), and the litigation strategy revealed in the descriptions of those task in the billing records, Plaintiffs are forwarding their billing declaration and invoices directly to the Court and will file same upon a Court directive.

As described further in the Declaration of Plaintiffs' Counsel, submitted herewith, the hours worked and the rates charged by Plaintiffs' Counsel were reasonable and necessary in the context of this case, and within the range of accepted rates for attorneys of our experience handling employment matters in the Eastern District of New York. Gonzalez v. Scalinatella, Inc., 2015 WL 3757069 (S.D.N.Y. June 12, 2015). Thus Plaintiffs maintain that an award of $216,667.67 to Monteiro & Fishman LLP for attorneys' fee, when cross-checked with their reasonable attorney hours and $400 per hour billing rate, totaling of $202,354.00, is fair and reasonable as it represents a lodestar multiplier of 1.07 – well below what is typically awarded in this Circuit. In re Lloyd's Am. Trust Fund Litig.,

2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit");

Additionally, Plaintiffs request reimbursement of their out-of-pocket expenses, which totaled $1,575.00. Plaintiffs' counsel has not charged fore typical expenses like Westlaw or Lexis research fees, travel or photocopying fees. "It is well-settled in this Circuit that 'attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." Tlacoapa v. Carregal, 386 F.Supp.2d 362, 374 (S.D.N.Y.2005).

### 2.    The Magnitude and Complexities of the Litigation

This matter was a complex matter involving 18 Plaintiffs, requiring extensive investigation, and analysis of over 7,000 documents to establish their entitlement to recovery. Accordingly, the complexity of this matter favors an award of the requested attorneys' fee award. Febus v. Guardian First Funding Grp., LLC, 870 F.Supp.2d 337, 340 (S.D.N.Y. 2012) ("[C]ourts have recognized that FLSA cases are complex and that [a]mong FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to [Rule] 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)."

### 3.    The Risk of the Litigation

The "[u]ncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award." Febus, 870 F.Supp.2d at 340. As detailed above, the uncertainty of continued litigation, along with the uncertainty of the collectability should Plaintiffs obtain a judgment, militated toward a resolution at this juncture.

### 4.    The Quality of Representation

"The 'most critical factor' in what is a reasonable attorney's fees [award] 'is the degree of success obtained' by the plaintiff." Velasquez v. Digital Page, Inc., 124 F.Supp.3d 201, 204 (E.D.N.Y. 2015) (quoting Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 152 (2d Cir. 2008); Asare v. Change Grp. of N.Y., Inc., 2013 WL 6144764, at *21 (S.D.N.Y. 2013) ("Class Counsel's skill and experience was directly responsible for this favorable settlement reached in an efficient manner without great Court intervention at an early stage of litigation."). Here, Plaintiffs believe that they have successfully obtained a favorable settlement that results in a substantial award to Plaintiffs in light of the defenses provided by Defendants.

Additionally, Plaintiffs' counsel, Marcus Monteiro, is an experienced litigator well versed in employment law. Specifically, he has been a litigator since 2002 when he worked as an associate at a national law-firm in downtown Manhattan. He has been deemed qualified to represent Nassau County in employment and labor law, as well as class actions, since 2014. In 2015, Mr. Monteiro was the principal attorney representing County of Nassau, Nassau County Sheriff's Department and Nassau County Policy Department, at trial in the E.D.N.Y. in a case involving employment-related claims. Wagner v. County of Nassau et al., 11-cv-1613 (E.D.N.Y. 2015).

Mr. Monteiro is an active member of the Labor and Employment Committee of N.C.B.A., having lectured the committee on F.L.S.A. matters. He currently concentrates his employment practice prosecuting wage/hour violations under the F.L.S.A. and N.Y. Lab. Law cases. Recent settlements in F.L.S.A. cases where this Court approved Mr. Monteiro's 33 1/3% contingency fee include: <u>Peraza v. Dimou et al.</u>, 18-cv-00042 (E.D.N.Y. 2019) (Feuerstein, S.); <u>Jose Evelio Mendez and Jose Armando Mendez v. Anthony Cortina et al.</u>,16-cv-04372 (E.D.N.Y. 2017) (Feuerstein, S.); <u>Mauro Molina Lopez and Lenin Mencia v. Giovanni Annunziata et al.</u>, 17-cv-0987 (E.D.N.Y. 2017) (Brown, G.); <u>Ochoa et al. v. Kaptan et al.</u>, 16-cv-02295 (E.D.N.Y. 2017) (Feuerstein, S.); and <u>Magalhaes v. Island Tennis, Inc. et al, 15-5859</u> (E.D.N.Y. 2016) (Bianco, J.).

Before focusing on employment law, Mr. Monteiro was experienced class counsel, having prosecuted class-actions throughout the United States. <u>Muehlbauer v. General Motors Corp.</u>, 05-cv-02676 (N.D. Ill.) (Represented purchasers of certain vehicles manufactured by General Motors in a class action alleging breach of warranty); <u>In re American Honda Motor Co. Oil Filter Products Liability Litigation</u>, 06-ml-01737 (C.D. Cal.) (Represented purchasers of certain vehicles manufactured by American Honda Motor Co. in a class action alleging breach of warranty.); <u>Marple v. Countrywide Financial Corporation and Countrywide Home Loans, Inc</u>., 07-cv-4402 (D. N.J.) (Represented residential and commercial real estate purchasers who were allegedly charged and paid mark-ups by Countrywide Financial Corporation and Countrywide Home Loans, Inc. for real estate settlement services in violation of the Real Estate Settlement Procedures Act and the New Jersey consumer protection statute.); <u>In re FedEx Corp. Shareholder Derivative Litigation</u>, 08-cv-02284 (W.D. Tenn.) (Represented a pension fund in a shareholder derivative action against the Board of Directors of FedEx Corp alleging breaches of fiduciary duties.)

**5.       The Requested Fee in Relation to the Settlement or The Lodestar Cross-check**

As noted above, the last step of the analysis is to cross-check the fee award against the lodestar multiplier. This step ensures that an otherwise reasonable percentage fee would not lead to a windfall for class counsel. <u>In re Rite Aid Corp. Sec. Litig.</u>, 396 F.3d 294, 306 (3d Cir. 2005) ("Courts also consider the size of the settlement to ensure that the percentage award does not constitute a 'windfall.'"); <u>Siddiky v. Union Square Hosp. Grp., LLC</u>, 2017 WL 2198158, at *11 (S.D.N.Y. May 17, 2017). As detailed above, the attorneys' fees requested herein represent a lodestar multiplier of only 1.07 – well below what is typically awarded in this Circuit.

**6.       Public Policy Considerations**

Public policy favors this Court approving the Settlement. "Attorneys who fill the private attorney general role must be adequately compensated for their efforts. If not, wage and hour abuses would go without remedy because attorneys would be unwilling to take on the risk. Adequate compensation for attorneys who protect wage and hour rights furthers the remedial purposes of the FLSA and NYLL." <u>Deleon v. Wells Fargo Bank, N.A.</u>, 2015 U.S. Dist. Lexis 65261 at *5 (S.D.N.Y. 2015) citing <u>Goldberger v. Integrated Res. Inc.</u>, 209 F. 3d 43,51 (2nd Cir. 2000) (Commending the general 'sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.")

    Accordingly, the Parties respectfully request judicial approval of the Settlement Agreement and jointly thank you for considering this request.

Very truly yours,

/s/
Marcus Monteiro
